

The Chrysler Building
405 Lexington Avenue, NY, NY 10174-1299
Tel: 212.554.7800    Fax: 212.554.7700
www.mosessinger.com

Kimberly Klein
Direct Dial: 212.554.7853
Fax: 917.206.4353
E-Mail: kklein@mosessinger.com

December 22, 2023

**VIA ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007

> Re:    ***Sophiana Cilus v. NYU Langone Hospitals**, Case No. 1:23-cv-00440 (JMF)*
> *(the "Action")*

Dear Judge Furman:

We represent Defendant NYU Langone Hospitals ("NYU Langone") in the Action and write in response to Plaintiff Sophiana Cilus' letter motion dated December 19, 2023 (ECF No. 38, the "December 19 Letter").

In the December 19 Letter, Plaintiff claims that Defendant withheld documents responsive to Plaintiff's discovery requests concerning employees in Defendant's Medical Intensive Care Unit (the "MICU") who requested "reduced shift hours." As detailed below, Defendant fully complied with Plaintiff's discovery requests.

Specifically, Request Nos. 3 and 4 of Plaintiff's Second Request for the Production of Documents, dated November 7, 2023 (the "Requests") requested that Defendant produce the following:

Request No. 3:  All documents and communications concerning any request by an employee of Defendant's Medical Intensive Care Unit for reduced shift hours, including but not limited to any such request by [Employee].

Request No. 4: All documents and communications concerning Defendant's decision to grant or deny any request for reduced shift hours in its Medical Intensive Care Unit, including but not limited to any such request by [Employee].

December 19 Letter, Ex. 4 at p. 2.

We objected to the Requests as overly broad in that the demand asked for documents concerning all MICU employees as opposed to those employees similarly situated to Plaintiff, who was a Physician Assistant. We further responded that no MICU Physician Assistant or Nurse Practitioner (collectively,



"Advanced Practice Provider (APP)"), other than Plaintiff, ever requested "reduced shift hours" and, accordingly, all documents responsive to the Requests had been produced in Defendant's earlier productions.

Counsel's representation in the December 19 Letter that "it came to light that another employee in Ms. Cilus' work unit, the Medical Intensive Care Unit ('MICU'), had been permitted reduced shifts" (December 19 Letter, p. 1) is inaccurate and misleading.[1]  Unlike Plaintiff, who requested a reduction in her scheduled shift hours, from 12.5 hours to 10 hours, the "employee" referenced in the December 19 Letter (hereinafter, the "Employee") did *not* ask for a reduced schedule, and at all times worked a 12.5 hour shift, coming in early and staying later as needed.   Rather, the Employee—who is a Nurse Practitioner, not a Physician Assistant—requested intermittent leave under the Family and Medical Leave Act ("FMLA") to attend occasional medical appointments as needed.  As Ms. Mehta testified:[2]

**Q**:  During your time in the MICU, are you aware of any employee being granted a shift shorter than the full and a half hours?
**A**:  A shorter than 12 hour shift?
**Q**:  Correct.
**A**:  No.
**Q**:  No employee, that you're aware of, in the MICU, was ever granted a reduction of shift length?
**A**:  Correct.

Exhibit A at 175:9-175:18.

**Q**:  How did that work for the length of his shifts?
**A**:  He would need to go during business hours to certain medical appointments. When he was gone for that extra hour, when he came back, he would stay even a half an hour late to help the oncoming team if needed. He would never leave in the middle of the shift and abandon it and go home. He would go to doctors appointment, he would come back, assume care back from his colleagues of his patient list, and then sign all of those out. So, he was never cutting the shift short as if I'm going to leave and not return. It was[:] I needed a break in order to do whatever was protected under that time.

*Id.* at 202:22-203:12.

Asking for occasional intermittent FMLA leave to attend medical appointments is entirely distinct from Plaintiff's need for a nine-month accommodation to work a reduced schedule under the Americans

---

[1] Counsel's selective quoting from Ms. Mehta's deposition transcript and assertion that she testified that the Employee "receive[d] a shift length of less than the typical 12 and a half hours" was disingenuous (December 19 Letter (quoting Mehta Dep. Tr. at 176:13-176:16)), as counsel failed to cite later testimony from Ms. Mehta clarifying that there was not a reduction is the Employee's shift (Exhibit A at 202:22-203:12).

[2] Excerpts from Ms. Mehta's November 3, 2023 deposition are attached as <u>Exhibit A</u>.



with Disabilities Act (ADA).  One of the key reasons that Plaintiff could not be accommodated in the MICU was the fact that her accommodation request meant that she would not be present for shift changes.  *Id*. at 186:11-186:15.  As Ms. Mehta testified, it was essential that MICU APPs be present when there was a shift handover:

> **A**:  So, the way that the ICU workflow is, there are a few key components to the workflow. So, at the beginning of the shift gets a handoff; it doesn't matter if it's 7:00 a.m. to 7:00 p.m. That handoff is incredibly important; it tells you what happened in the prior 12 to 24 hours, what's going on with the patient, what needs to happen. You take that information and that really determines the rest of your day. Now at the end of your shift there's a lot of stuff that has transpired. You need to be able to clearly communicate that to the next team coming on, so there's no ambiguity. When you have multiple handoffs, there's miscommunication, things get lost and absolutely affects patient care. The goal here is to make sure there's continuity and patients are taken care of in the most safe way possible.
> **Q**:  Why would an additional handoff lead to a breakdown in communication?
> **A**:  Because it does.
> **Q**:  Always?
> **A**:  Overwhelmingly, we have seen it clinically. We have had meetings internally to prevent such circumstances from happening again.

*Id*. at 116:9-117:15.

> **Q**:  If the employees accurately communicated information with the handoff, wouldn't multiple handoffs be possible without increasing miscommunication?
> …
> **A**:  We only have evidence in our clinical setting of the opposite of that happening.

*Id*. at 119:10-119:16; *see also generally id*. at 116:6-121:5.  Not only did the Employee not request a reduced shift, Ms. Mehta testified that the Employee "made sure he came back and gave handoff to the next team to minimize any disruption for continuity."  *Id*. at 191:20-191:22.

Plaintiff is attempting to conflate two completely different situations under two distinct statutory frameworks—the need for intermittent leave pursuant to FMLA with her request for a reduced schedule for nine months as an ADA accommodation.  It is the latter, which Defendant determined was an undue burden on the MICU as a result of her absence during the handoff.  As Ms. Mehta explained during her deposition, "So, the ICU is a specialized unit.  We have the sickest most complex patients in the hospital. Those patients we sign out in great detail.  Those details can't just be forgotten."  *Id*. at 117:25-118:4.

While it is our firm position that we fully complied with Plaintiff's document requests and that no other APP requested reduced shift hours, in an effort to streamline the process, Defendant will make a supplemental production of documents in response to Request Nos. 3 and 4.  As the documents are highly confidential and contain medical information of a non-party, we ask that the production be made after we have had a chance to meet and confer with Plaintiff's counsel concerning our application to file these records under seal and with appropriate redactions pursuant to Rule 7(c) of Your Honor's Individual Rules.



We appreciate the Court's consideration.

Respectfully,

_____/s/ Kimberly Klein_____
Kimberly Klein

KK:an


Fact discovery in this matter ended on November 27, 2023.  Nevertheless, the parties have continued to ask the Court to rule on numerous discovery disputes.  For substantially the reasons discussed in Defendant's letter, and in light of Defendant's representation that it "will make a supplemental production of documents in response to [Plaintiff's] Request Nos. 3 and 4," Plaintiff's letter motion is DENIED.  No later than **January 10, 2024**, the parties shall meet and confer, and Defendant shall complete any such supplemental production.  (To the extent necessary, Defendant should seek leave to file documents under seal and/or in redacted form, but that may not be necessary; discovery is not generally filed on the public docket.)  The Court will not entertain any further motions that effectively seek to extend fact discovery.

The Clerk is directed to terminate ECF No. 38.

SO ORDERED.

December 27, 2023